UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD TUCKER,<br><br>    Plaintiff,<br><br>  v.<br><br>ETTLESON HYUNDAI, LLC,<br><br>    Defendant. | No. 19 C 4334<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Richard Tucker alleges that his former employer, Ettleson Hyundai, LLC, discriminated and retaliated against him based on his race and national origin in violation of Title VII and 42 U.S.C. § 1981. Ettleson has moved to dismiss all the claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 11. The motion is denied in part and granted in part.

**Legal Standard**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

Tucker is black. He began working at Ettleson as a car detailer on May 16, 2018. R. 1 ¶¶ 11, 24. He alleges that he was "an exemplary employee" and "was praised for getting the details done quicker than the previous person who was detailing before he came." *Id.* ¶¶ 13, 17.

On July 17, 2018, Tucker's coworker, a white person named "Bruce," was playing loud music that used the word "n*****." *Id.* ¶ 18. Tucker asked Bruce to turn the music down because he found the song lyrics offensive. *Id.* Bruce refused, and Tucker turned it off himself. *Id.* Tucker and Bruce then argued about the music, with Bruce allegedly saying to Tucker, "I don't see why you have a problem with them saying the "N*****" word[.] [T]hat's what you are[;] a N*****." *Id.* An assistant service manager, named Krolikowski, told Bruce to "cut it out" and that Tucker "had the right not to listen to those lyrics." *Id.* Bruce then stated he was going to complain

2

to Ettleson's owner about the incident. *Id.* ¶ 19. Six days later, on July 23, 2018, Ettleson fired Tucker without explanation. *Id.* ¶ 21.

## Analysis

Tucker's complaint includes the following claims: Count I for race harassment under § 1981; Count II for race and national origin discrimination under Title VII and § 1981; Count III for race discrimination (again) under Title VII and § 1981; and Count III (again) for retaliation under Title VII. Tucker concedes his national origin and retaliation claims, *see* R. 18 at 4, so those claims are dismissed. Further, a plaintiff must allege the existence of a contract to state a claim under § 1981. *See Walker v. Abbott Labs.*, 340 F.3d 471, 475 (7th Cir. 2003) ("proof of a contractual relationship is necessary to establish a § 1981 claim"); *see also Adam v. Obama for Am.*, 210 F. Supp. 3d 979, 985 (N.D. Ill. 2016). Since Tucker has not alleged that he was employed pursuant to a contract, his § 1981 claims are also dismissed. That leaves racial harassment and discrimination claims under Title VII.

**I.     Harassment**

Under Title VII, a plaintiff must prove that the employer created a hostile work environment by showing: "1) he was subject to unwelcome harassment; 2) the harassment was based on his race; 3) the harassment was severe and pervasive so as to alter the conditions of the employee's environment and create a hostile or abusive working environment; and 4) there is a basis for employer liability." *Mason v. S. Illinois U. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000).

3

Here, Tucker fails to plausibly allege the harassment was severe and pervasive. To determine whether the harassment was severe and pervasive, courts consider "factors such as whether conduct is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." *Cole v. Bd. of Trustees of N. Ill. Univ.*, 838 F.3d 888, 897 (7th Cir. 2016). "There is no 'magic number' of instances or type of slur that indicates a hostile work environment." *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017). "A 'severe episode' that occurs as rarely as once and a relentless pattern of lesser harassment both may violate Title VII." *Id.*; *see also Cole*, 838 F.3d at 897 ("An assault, for example, may create an objectively hostile environment even if it is an isolated occurrence."). In other words, the more severe the conduct, the lesser the frequency required to establish a hostile work environment.

Of course, the use of racial slurs is reprehensible. But a single instance in which a coworker uses a racial slur is insufficient to plausibly allege a hostile work environment. *See Sanders v. Village of Dixmoor*, 178 F.3d 869, 869 (7th Cir. 1999) (rejecting hostile work environment claim where sole evidence of racial harassment was the supervisor's insult, "N*****, you're suspended"); *Smith v. Ill. Dep't of Trans.*, 2018 WL 3753439, at *12 (N.D. Ill. Aug. 8, 2018) (similar allegations), *aff'd,* 936 F.3d 554 (7th Cir. 2019); *Fortenberry v. United Airlines*, 28 F. Supp. 2d 492, 496 (N.D. Ill. 1998) (similar allegations). Tucker references prior such incidents when he previously worked for Ettleson in about 2003. But any claim based on conduct that old is time-

4

barred, and is far too separated in time from the 2018 incident to combine with it to form a hostile work environment.

Furthermore, the Seventh Circuit distinguishes use of racial slurs by a supervisor from use of the word by a coworker because "a supervisor's use of the term impacts the work environment far more severely than use by co-equals." *Rodgers v. W.-S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993). "[W]hen a plaintiff claims that co-workers are responsible for the harassment, he must show that his employer has been negligent either in discovering or remedying the harassment." *Cole*, 838 F.3d at 898. Here, Tucker does not allege any negligence by Ettleson with respect to its immediate response to the incident. Rather, Tucker alleges that his supervisor told his co-worker that Tucker had a right not to be subjected to music using offensive language, and the music was not turned back on. Thus, even if Tucker has plausibly alleged that a hostile work environment existed, he has not alleged that Ettleson was negligent in remedying the harassment. Ettleson's decision to terminate Tucker is another story, which is implicated by Tucker's discrimination claim that the Court addresses presently.

## II. Discrimination

To state a claim for race discrimination under Title VII, a plaintiff needs "only to allege . . . that [his employer] fired him because of his race." *Freeman v. Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 965 (7th Cir. 2019). Tucker rests his claim that he was fired because he is black on his allegation that his termination followed his complaint about a white co-worker using a racial slur.

5

Ettleson argues that the claim that Tucker was fired for making a complaint, "sounds in retaliation rather than discrimination," and that Tucker "does not allege anywhere that [he] was terminated on the basis of his race." R. 21 at 5. Tucker has dropped his retaliation claim (presumably because he failed to administratively exhaust it with the EEOC), and the Court agrees that Tucker's complaint could be clearer. But, although being fired after making a complaint about a co-worker's conduct usually is the basis for a retaliation rather than a discrimination claim, Tucker's allegation that he complained about a white co-worker's use of racial slurs is also sufficient to state a claim for discrimination for the simple fact that Tucker is black. Tucker's complaint in this case suggests no legitimate reason for his termination. According to Tucker's allegations, he was entirely justified in asking his co-worker not to play music using racial slurs, and the co-worker responded with additional hateful language. Tucker does not expressly allege whether his co-worker Bruce kept his job after the incident. But Tucker's allegation that he was fired after raising a legitimate complaint against a white employee, permits the plausible inference that Ettleson would not have fired a white employee for making an analogous complaint. And if Ettleson wouldn't have fired a white employee for similar conduct, it is plausible to further infer that Tucker's race was at least a motivating factor in Ettleson's decision to fire him. Maybe the facts will show otherwise. But Tucker's termination for no apparent legitimate reason is a basis to order discovery in this case.

## Conclusion

Therefore, Ettleson's motion to dismiss [11] is granted with respect to all claims except for Tucker's race discrimination claim under Title VII.

ENTERED:

*Thomas M. Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: November 25, 2019